## WINTERS NATIONAL BANK & TRUST CO. OF DAYTON, Trustee, Plaintiff-Appellee v. CULLEN et, Defendant-Appellees; REESE et, Defendant-Appellants.

Ohio Appeals, Second District, Montgomery County.

No. 1771. Decided February 23, 1944.

Munger & Kennedy, Dayton, for plaintiff-appellee.

Doyle & Lewis, Toledo, for defendants-appellants, Florence Shelby Reese and Bessie E. Shelby Roberts.

Landis, Ferguson, Bieser & Greer, Dayton, for defendants-appellees, heirs of the half blood, Julius Carroll Smith et.

## OPINION

By GEIGER, J.

This matter is before this court on appeal from a final judgment of the Probate Court of Montgomery County, Ohio, dated March 2, 1943, in which the Probate Court determined the heirs of the decedent, Owen Smith, of whose property under his will, The Winters National Bank & Trust Company is trustee.

Notice of appeal to the Court of Appeals from the judgment of the Probate Court was given by Bessie E. Shelby Roberts and Florence Shelby Reese on March 20, 1943, and the case was lodged in this court.

The petition in the Probate Court named ninety-nine known individuals as defendants, and stated that there were other unknown heirs who would increase the number of defendants.

The petition in the Probate Court filed by the Winters National Bank & Trust Company was for the purpose of determining the heirs of the deceased testator, and states that the action is brought by it as trustee under the will of Owen Smith, deceased, of whom it is the duly qualified trustee; that said Owen Smith left a will admitted to probate in Montgomery County, Ohio, on the 24th day of February, 1892, a copy of which was attached to said petition.

Plaintiff alleges that Willis P. Smith named in said will died on the 13th day of January, 1942; that Mary D. Smith, named in said will died many years ago (1892); that a substantial amount (not named) of personalty remains unconsumed in the hands of the plaintiff as trustee; that under the provisions of the will of Owen Smith the property now remaining in the hands of the plaintiff is to be transferred or paid to the legal heirs of said Owen Smith, deceased, and the petition then recites the only known parties claiming shares in the distribution of said property. Among these are a number who are guardians of incompetent persons and some guardians of minors.

It is alleged that unknown heirs of certain named decedents may claim shares in said property.

The prayer of the petition is that the court determine who are the legal heirs of said Owen Smith, deceased, and as such legatees under his said will, entitled by law and the will to share in the distribution of said property.

By Items First and Second, the will makes certain disposition not of importance.

That the questions involved may be understood, it is necessary to quote Items Third, Fourth and Fifth of said will, which are as follows:

"3rd. The balance of my property shall be held by my executor in trust to be disposed of as follows: One-half of said property said executor shall hold and invest in the most advantageous manner possible in trust for my son Willis P. Smith and out of the earnings thereof or from the principal if necessary shall pay for the support and maintenance of my said son from time to time at intervals of not longer than one month such sums as in the judgment of said executor his necessities and wants may require but no portion of said property or money shall be transferred or paid into said Willis P. Smith's own hands or placed within his control. I make this provision in his case because he has no knowledge of the value of money and would not know how to take care of it or use it properly for his own benefit.

The other half of said property said executor shall transfer to pay to my niece and adopted daughter Mary D. Smith provided she shall have attained the age of twenty-five years at the time said estate is ready for distribution. Should she not then have attained that age, said executor shall hold and invest said property in trust for her until she shall arrive at said age of twenty-five years at which time said property shall be transferred or paid over to her and during the time he so holds her said property in trust he shall pay over to her from time to time from the earnings of principal thereof such sums as he may deem necessary for her support. At the death of my said niece should she die without issue and before the age of twenty-five years or before said property is turned over to her as above provided I desire that my executor shall hold said property in trust for my said son Willis P. Smith under the same conditions as are required with reference to the provisions hereinbefore made for him.

4th. If at the death of my said son any portion of the funds or property held in trust for him as aforesaid shall remain unconsumed I direct that in case my son leave no issue of his body such portion shall be transferred or paid to my said niece Mary D. Smith provided she shall then have arrived at the age of twenty-five years or if she shall not then have arrived at said age said property shall be held in trust for her in the manner and under the same conditions as herein provided with reference to her share of my estate and when she shall arrive at said age said property shall be turned over to her. Should my son however die leaving issue said property shall pass to and inure wholly to the benefit of such issue.

5th. Should any of said property remain unconsumed in the hands of my executor at the death of both said Willis P. Smith and Mary D. Smith I direct that the same shall be transferred or paid to my legal heirs."

Ruth Lee Smith Schelin, a defendant, files an answer through her constituted attorneys, in which she admits all the allegations contained in the first and second paragraphs of the petition; that under the provisions of the will of Owen Smith, deceased, the property now remaining in the hands of the plaintiff is to be transferred or paid to the legal heirs of said decedent, and asks that due proof of heirship may be required.

Further answering, she says that she is the daughter of Carroll Bartholomew Smith who died July 10, 1918; that her said father was the son of Julius Holland Smith, now deceased, who was a **half** brother of Owen Smith, deceased; that by reason of such relationship, she is the grand niece of the half-blood of Owen Smith, and an heir at law under the Fifth provision of said will, and entitled to share in the distribution of the remaining unconsumed property now held by the plaintiff. She asks that she be determined and held to be a legal heir of Owen Smith, deceased, and as such a legatee under his said will, entitled by law and will to share in the distribution of the property held by the plaintiff.

Julius Carroll Smith, a defendant, files an answer substantially the same as that of Ruth Lee Smith Schelin, reciting that he is the son of Caroll Bartholomew Smith, and a brother of Ruth Lee Smith Schelin.

Helen Smith Sullivan, a defendant, files an answer prac-

tically identical with the two answers next above referred to, with the same prayer, with the exception of the allegation that she is the daughter of Alexander Hunter Smith, now deceased, who was the son of Julius Holland Smith, now deceased, who was a half brother of Owen Smith.

Harry S. Winer was appointed guardian ad litem for Lydia Smith an incompetent person, and files an answer, praying the court to protect the rights of said Lydia Smith, an incompetent person.

Ney Otis, guardian of Lydia Smith, an incompetent person, files an answer substantially same as the foregoing answers, but reciting that Lydia Smith is the daughter of Macklot Thompson Smith, who died June 19, 1935; that her said father was a son of Julius Holland Smith, now deceased, who was a half-brother of Owen Smith. The same prayer as the foregoing answer repeated.

The foregoing are all the answers filed by the heirs of the half-blood of the deceased testator, Owen Smith. Other answers are filed by those of the whole blood.

Florence Shelby Reese and Bessie E. Shelby Roberts filed a joint answer; they admit that Willis P. Smith died on the 13th day of January, 1942, and that Mary D. Smith died many years ago; they admit the trusteeship of the bank and allege that they are the daughters of Harry Shelby, who was a son of Mary Smith Shelby, who was a sister of the full blood of Owen Smith; they allege that they are entitled to share in the distribution of the unconsumed property by virtue of Item Fifth. They allege that the remainder of the legal heirs of Owen Smith by the terms of said decedent's will is a vested remainder subject to complete defeasance by the life tenant, Willis P. Smith, leaving issue surviving him; that at the time of the death of Owen Smith, Willis P. Smith was unmarried and up until the time of his death was confined in an inebriate institution; that said Willis P. Smith was a confirmed drunkard all his life, and was known to be such by the testator, Owen Smith; these defendants further say that it was the intention of said Owen Smith that his legal heirs as described in Item Fifth of his said will shall include only the brothers and sisters of the full blood or their descendants, in accordance with the law as to descent and distribution as of the time of the death of the testator; they pray that the court adjudge that the legal heirs of Owen Smith, deceased, entitled to share in the

distribution of the unconsumed portion, are the descendants of the full blood brothers and sisters of said Owen Smith and their heirs per stirpes, and that the interest created by the will of Owen Smith for his legal heirs vested as of the time of his death.

On March 2, 1943, the Probate Court filed a final entry determining the heirship, in which he found that the allegations of the petition are true; that under the provisions of the will of Owen Smith, deceased, the legal heirs of Owen Smith as of the date of the death of Willis P. Smith, to-wit: the 13th day of January, 1942, are entitled to the distribution of so much of the trust fund in the hands of the plaintiff as is remaining after payment of expenses, and that under the laws of the State of Ohio existing at said date, the brothers and sisters of said Owen Smith, deceased, of the whole blood and half-blood or their descendants, per stirpes, are entitled to such distribution.

The distribution announced by the court is of the 1/17th part to David Holland Waymire and others bearing the same relationship to the testator, to Margaret McColgin Kemper of the 1/102d part, and to others of the same relationship, the same amount. To Ruth Lee Smith Schelin and to Bessie E. Shelby Roberts, each the 1/34th part, and a like proportion to other heirs of the half-blood in the same degree of relationship to the decedent.

The court then determines the proportions in which each of the named heirs is entitled to share, the court naming thirty-five living defendants, and further finds that the unknown heirs of Julia Allen Smith should appear in this action as the heirs of said Julia Allen Smith, deceased, who, the court finds from the evidence, died leaving no lineal descendants.

The court orders that the plaintiff distribute said trust funds in accordance with the foregoing finding.

The defendant, Bessie E. Shelby Roberts and Florence Shelby Reese gave notice of appeal to the Court of Appeals from the finding, order and judgment rendered by the Probate Court of Montgomery County, Ohio, on the 2d day of March, 1943, said appeal being on questions of law.

The Bill of Exceptions is not long, but in it there are certain statements of counsel and comments of the court which should be alluded to. Mr. Munger, counsel for the Bank, stated to the court, in the opening that the bank is trustee; that Owen

Smith, testator, died February 20, 1892; that Mary D. Smith, named in said will, died July 28, 1892, the same year in which Owen Smith, testator, died. Mary D. Smith was a niece and also adopted daughter of the decedent, Owen Smith; her name being before adoption by Owen Smith, Mary Daniels. She was adopted by Owen Smith on November 13, 1883, and died without issue, long before she was twenty-five years of age. Willis P. Smith died unmarried and without issue. Counsel submits a statement of those whom he, on investigation, found to be heirs of the whole and half-blood, and asserts that there will be no question so far as they could ascertain the heirs, but that in case of some, they have been unable to trace relationship, and that he will submit authorities as to the fact of those that have not been found.

Counsel points out that in a family tree which he examined, there were a number of errors. The court made inquiry as follows:

"Before you introduce it (the evidence as to unknown heirs) I want to ask counsel what matters are contested, if any? What controversies are there on points of fact?"

To this Mr. Winer replied:

"There is only one question: whether or not the whole blood share entirely, or the whole and half blood share? It is a question of law."

The court requests that the record be read "since there is no contest on the question of fact". Thereupon Mr. Munger read into the record the further statement of facts which are not disputed, as the heirs had been named. The court inquired

"Do I understand all these heirs are direct lineal descendants of Owen Smith?"

Answered by Mr. Munger:

"No, none of them are."

Mr. Munger further stated that Mary D. Smith died in 1892, the year of the death of Owen Smith, and the only other

child is Willis P. Smith, who died last January (1942). Mary D. Smith was his sister's child. Both Willis P. Smith and Mary D. Smith died intestate and without issue.

Mr. James: "She (Mary) had to live until she was twenty-five before she got anything. I don't think she got anything."

Mr. James, continuing: "So far as Mary Smith is concerned, we can construe this will as though she never lived, or never got anything."

The facts not being disputed, it is purely a question of law as to when the estate vested. If the estate vested upon the death of the testator in 1892, the statute excluding the heirs of the half-blood controlled. If the estate vested in 1942, when Willis P. Smith died, the heirs of the half-blood participate equally with those of the whole blood. **Sec. 10503-4-6:**

"If there be no spouse, or children or their lineal descendants and no parents surviving, to brothers and sisters, **whether of the whole blood or half blood** of the intestate or their lineal descendants per stirpes." (Effective Sept. 2, 1935)

Assignments of error were filed in behalf of Florence Shelby Reese and Bessie E. Shelby Roberts, appellants to the following effect:

"The finding and judgment of the Probate Court are contrary to law:

1. In finding as a matter of law that the legal heirs of Owen Smith to whom gift of remainder of trust fund is made by Item 5 of his will are to be determined as of the death of the life tenant, Willis P. Smith, to-wit: January 13, 1942.

2. In finding as a matter of law that brothers and sisters of the half blood as well as of the whole blood or their lineal descendants are entitled to distributtion of funds in the hands of plaintiff.

3. In finding as a matter of law that the gift to the legal heirs of Owen Smith by the terms of his will created a contingent remainder in said legal heirs.

4. In not finding as a matter of law that the gift to the legal heirs of Owen Smith by the provisions of his will created

a vested remainder or a vested remainder subject to complete defeasance in the said legal heirs.

5. In entering judgment on said erroneous findings as hereinbefore set forth and ordering distribution in accordance therewith as a part of said judgment."

Counsel have been diligent in finding and quoting principles which have been established in the State of Ohio and by text writers, which may be quoted to some extent with underscoring of any portions that may seem of special consequence.

"The cardinal rule of interpretation of a will is to ascertain and give effect to the intention of the testator, which has been variously declared to be the paramount rule, the primary guide, the sole guide, the guiding spirit, the pole star. This intention will be followed unless testator attempts to make disposition contrary to some rule of law." **41 O. Jur., §467, p. 490.**

"If the condition on which the estate depends is precedent, the estate is contingent; if subsequent, it is vested subject to defeasance." **41 O. Jur., §709, p. 834.**

"Conditions are of two kinds, namely, conditions precedent and conditions subsequent. A contingent precedent is a condition upon the happening of which an estate will vest. A condition subsequent defeats an estate already vested. There are no technical words to distinguish between conditions precedent and conditions subsequent * * *. No presumptions are indulged by law to create conditions precedent in a will."

"It is well established that the fact that a remainder created by will is liable to be divested by a subsequent event does not render it contingent. There is a clear distinction between contingent estates which may vest and vested estates which may be defeated upon the happening of a future event." **41 O. Jur., §656, p. 787.**

See: **Stark v Marsh, 29 O. C. A. 417.** The court there states on page 420:

"Estates created by will under the policy of the law will be regarded as vested rather than contingent unless the contrary intention is apparent from the context of the will."

See **Jones v Lloyd, 33 Oh St 572.**

It is not necessary further to quote from separate cases or text books, when the matter has been clearly expressed in the recent case of **Ohio National Bank v Boone, 139 Oh St 361,** where the syllabi may be epitomized, with our emphasis;

1. Ordinarily, a will speaks as of the death of the testator.

2. The law favors the vesting of estates at the earliest possible moment, and a remainder after a life estate vests in the remaindermen at the death of the testator, **in the absence of a clearly expressed intention to postpone the vesting to some future time.**

4. Where a testator wills a part of his estate to another, directing that she shall receive therefrom a stipulated sum annually for her life, and further provides that after her death the unconsumed portion shall be paid to "my heirs, share and share alike", the remainder in such portion of the estate as may be unconsumed by the life beneficiary vests at the testator's death in such person or persons as then answer the description of testator's heirs under the statute of descent and distribution in force at such time and **unless a contrary design on the part of the testator is plainly apparent.**

Zimmerman, Judge, delivering the opinion of the court, has cited and commented on many cases bearing upon the question before us and the reading of his opinion will be profitable. See **Layton v Laycock, 33 Oh St 128,** syllabi 3 and 4.

The net result of the decisions in Ohio, and the text book writers, is that the law favors an early vesting of an estate **in the absence of a clearly expressed intention to postpone the vesting to some future time.** It is also well established and conceded by counsel that if the intention of the testator may be ascertained by the language used by him in the will that such intention shall control, irrespective of any rules in reference to vesting of estates which have been promulgated where the meaning of testator is not clear, but must be interpreted by the court.

We will endeavor to bring the provisions of the will into a narrow scope covering Items 3, 4 and 5, which are heretofore set out in full.

Testator provided that one-half of his estate shall be vested in trust for his son, Willis P. Smith, and that the earnings thereof or a part of the principal, if necessary, shall be paid for his support. The will states:

"I make this provision in his case because he has no knowledge of the value of money, and would not know how to take care of it or use it properly for his own benefit."

It is provided that his executor shall transfer to his niece and adopted daughter, Mary D. Smith, one-half of the estate, provided she shall have attained the age of twenty-five years at the time the estate is ready for distribution. Should she not have attained that age, her half shall be held and invested in trust for her until she shall arrive at such age, at which time said property shall be transferred to her and until it is so transferred, the executor shall pay over to her from the earnings or the principal, such sums as he may deem necessary. At the death of his said niece and adopted daughter, should she die without issue and before the age of twenty-five years or before said property is turned over to her as above provided, the executor shall hold said property in trust for his said son, Willis P. Smith, under the same conditions as are required with reference to the provisions before made for him. This provision provides for the conveyance of Mary's half interest to Willis in the event she dies before she reaches the age of twenty-five years or before said property is turnd over to her. He seems to make no provision for the possible contingency of Mary dying before the age of twenty-five years with issue. However, she died long before reaching the age of twenty-five and without issue and we need not labor the question as to a possible omission of the contingency which might have happened, but did not.

In the 4th Item, it is provided that if, at the death of the son, any portion held in trust for him shall remain unconsumed or in case the son leaves no issue of his body, such portion shall be transferred to Mary provided she shall then have arrived at the age of twenty-five years or if she shall not have arrived at that age, said property shall be held in trust for her in the same manner and under the same conditions provided with reference to her share. Should his son die leaving issue, said property shall pass to and inure wholly to the benefit of such issue. The result of this 4th Item is that if his son dies before his half is consumed, without issue, his half or the balance shall be transferred to Mary, provided she shall

have arrived at the age of twenty-five years, or if not, shall be held in trust for her until she so arrives. In the meantime, the estate to be administered as provided for her share. To this point, it appears clear that the main concern of the testator was to provide for his two children, one of whom was an inebriate and the other of whom was an adopted child of tender years at the time he made his will. Testator no doubt realized that he had not provided for the disposition of his estate on the contingencies of his son dying without issue and of Mary dying without issue before she arrived at the age of twenty-five years, both of which contingencies happened.

To take care of the situation, he provided Item 5, which gives us concern:

"Should any of said property remain unconsumed at the death of both Willis P. Smith and Mary D. Smith, I direct that same shall be transferred or paid to my legal heirs."

It is apparent that the testator was not much concerned as to the inheritance by his legal heirs at the time he made his will; he knew that he had half-brothers and half-sisters who had children, and who might normally become his heirs if it were not for the existing statute excluding from inheritance the half-blood of the testator. Had he intended to care for them, it would have been quite easy for him to have said at the end of Item 5, "whether they be of the whole or half-blood". From the time testator made his will in 1886, until his death in 1892, and thereafter until 1942, when Willis finally died without heirs, the estate which passed under Item 5 was undeterminable, and the existing conditions which were subject to change under the conditions of the will by birth of heirs or the death of heirs were "precedent" to the time the estate finally vested in those heirs, and the estate was therefore contingent.

We have been very much impressed by the excellent opinion of the trial court, and might well have disposed of the case by adopting it. We have read and studied the cases cited and are of the opinion that the Probate Court committed no error in the judgment rendered. Assignments of error overruled and judgment of the court below affirmed.

BARNES, P. J., and HORNBECK, J., concur.